UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUIS PERALES and PARICIA PERALES,

     Plaintiffs,

v.                                                                          Case No. 14-11468

                                                HON. AVERN COHN

UNITED STATES OF AMERICA,

     Defendant.

_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 20)
## AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Doc. 23)

### I. INTRODUCTION

This is an automobile accident case under the Federal Tort Claims Act, 28 U.S.C. §§ 1346 & 2671 *et seq.* ("FTCA"). Luis Perales ("Perales") and Paricia Perales ("Mrs. Perales") (collectively, "Plaintiffs") claim damages under the FTCA against the United States of America ("the Government") after a Chevrolet Trailblazer fleeing a government owned Chevrolet Suburban hit him. In a one-count complaint, Plaintiffs allege that the driver of the Suburban was negligent in his pursuit of the Trailblazer, resulting in injury to Perales.

The parties have filed cross motions for summary judgment (Docs. 20 & 23). For the reasons that follow, the Government's motion (Doc. 20) is GRANTED and Plaintiffs' motion (Doc. 23) is DENIED.

1

## II. BACKGROUND[1]

On May 6, 2012, an Immigration and Customs Enforcement (ICE) agent was working with the Detroit Police Department in southwest Detroit in a joint operation to assure community safety during the celebration of Cinco de Mayo.  ICE Special Agent Antonio Galvan and his assigned partner, Detroit Police Officer Brian Gadwell, participated in that effort; they were driving the unmarked Chevrolet Suburban.  Galvan was driving; Gadwell was operating the radio.

Near the intersection of Vernor Highway and Campbell Street, Galvan and Gadwell heard five to six gunshots fired near a crowd of more than 30 people.  Gadwell told Galvan the shots came from a Chevrolet Trailblazer.  The Trailblazer was about one to two vehicle lengths from the Suburban.  Galvan began following the Trailblazer and, when no marked vehicle was nearby to make a stop, Galvan activated the vehicle's lights and siren.  He attempted to pull in behind the Trailblazer to conduct a stop; the Trailblazer accelerated and Galvan initiated pursuit.

Eventually, the Trailblazer turned the wrong way down a one-way residential street, Morrell Street, with the Suburban in pursuit.  Morrell Street allows for only a single lane of traffic with cars parked on both sides of the street.  The two vehicles were traveling in excess of the posted 25 miles per hour.

Children and adults were out playing in Morrell Street.  Perales was standing on Morrell Street facing toward the oncoming vehicles as he heard the squealing tires and saw the police lights.  He warned people to get out of the way; however, a small child

---

[1]     The background of the case which follows is taken from the Joint Statement of Facts for Defendant's Motion for Summary Judgment (Doc. 33) and the Joint Statement of Facts for Plaintiffs' Motion for Summary Judgment (Doc. 34).

headed into the path of the Trailblazer.  Perales and a neighbor, Yolanda Diaz, who were on opposite sides of the street, rushed to protect the child.  As the Trailblazer passed, it hit Perales in the face, knocking him into Diaz.  Perales sustained injuries to his face, which later required surgery.

From the time the shots were fired to when Perales was hit, approximately 55 seconds elapsed.

Perales, along with his wife Paricia Perales filed this case alleging negligence on the part of Galvan.  Specifically, Perales says that Galvan was negligent in pursuing the Trailblazer the wrong way down Morrell Street, and by failing to call off the pursuit when the risk of harm to the public outweighed the value of apprehending driver of the Trailblazer.  Because the Suburban was owned by the Government and Galvan was a government employee, Perales claims that the Government is responsible for his injuries arising out of the accident.  Mrs. Perales alleges a corresponding loss of consortium claim.

### III. STANDARD OF REVIEW

The summary judgment standard of review under Fed. R. Civ. P. 56 is well known and not repeated here.  Ultimately the District Court must determine whether the record as a whole presents a genuine issue of material fact drawing "all justifiable inferences in the light most favorable to the non-moving party."  *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

### IV. DISCUSSION

Both parties have filed motions for summary judgment.  The Government argues

3

that summary judgment should be granted because (1) the Court lacks jurisdiction over Plaintiffs' claim since the discretionary function exception to sovereign immunity applies in FTCA actions; (2) the Court lacks jurisdiction because Plaintiffs' claims fail under Michigan law; and (3) because Perales's injuries were caused by contact with the Trailblazer, Galvan's actions were not the proximate cause of Perales's injuries.   In addition, the Government argues that Mrs. Perales's derivative loss of consortium claim must be dismissed as well.   Plaintiffs, by contrast, argue that summary judgment should be granted in their favor because Galvan breached his duty under Michigan law not to endanger life or property of others in when discharging his official duties, and by failing to terminate the chase when the risk of harm to innocent persons outweighed law enforcement interests.

### A. The FTCA and the Discretionary Function Exception

The FTCA is a waiver of sovereign immunity with respect to tort claims against the United States.   Jurisdiction under the FTCA is limited to actions for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."   28 U.S.C. § 1346(b)(1).   Liability may be imposed "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."   *Id.*   Thus, "an action under the FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward."   *Carlson v. Green*, 446 U.S. 14, 23 (1980).   Because Plaintiffs allege a negligent act occurring in Michigan, Michigan substantive law applies.

4

The waiver, however, is subject to several exceptions, one of which is the FTCA's "discretionary function exception." *See* 28 U.S.C. § 2680(a). This exception provides that the United States is not liable under the FTCA for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." *Id.*

The Sixth Circuit has outlined a two-part test for determining when the discretionary function exception applies.

> The government retains its immunity when the challenged conduct satisfies both parts of a two-part test. First, the conduct must be "discretionary," not "controlled by mandatory statutes or regulations." *United States v. Gaubert*, 499 U.S. 315, 328 (1991). Put differently, the action in question must "involve [ ] an element of judgment or choice," rather than follow a "federal statute, regulation, or policy specifically prescrib[ing] a course of action" and leaving "the employee [ ] no rightful option but to adhere to the directive." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Second, the exercise of discretion must be "the kind that the discretionary function exception was designed to shield;" *id.*, *i.e.*, it must be "susceptible to policy analysis," *Gaubert*, 499 U.S. at 325. There is a "strong presumption" that the second part of this *Gaubert* test is satisfied if a court concludes that the employee was exercising discretion. *Id.* at 324.

*A.O. Smith Corp. v. United States*, 774 F.3d 359, 364-65 (6th Cir. 2014) (brackets in original).

In determining whether the exception applies, the court must look to "the nature of the conduct, rather than the status of the actor." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 (1984). Similarly, "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion . . . but on the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991).

5

The discretionary function is intended "to prevent judicial 'secondguessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Varig*, 467 U.S. at 814.

In *Gaubert*, the Supreme Court held that the discretionary function exception barred negligence claims against federal regulators at the operational or management level, because their day-to-day operations involved the exercise of discretion in the furtherance of public policy goals. The Supreme Court distinguished cases where, for example, "one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car." *Gaubert*, 499 U.S. at 325 n.7. The Supreme Court stated that a negligence claim under these circumstances does not fall under the discretionary function exception because, "[a]lthough driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy." *Id.*

The Supreme Court's dictum on the application of the discretionary function exception to automobile negligence cases is persuasive. Plaintiffs allege that Galvan was negligent in his decision to pursue the Trailblazer the wrong way down a one-way street in excess of posted speed limits. Assuming, arguendo, that Galvan's actions do constitute negligence under Michigan law, such actions do not fall under the discretionary function exception. Galvan's decision to pursue the Trailblazer down Morrell Street was not "grounded in social, economic, [or] political policy," *Varig*, 467 U.S. at 814, nor was it "based on the purposes that the regulatory regime seeks to accomplish," *Gaubert*, 499 U.S. at 325 n.7. Therefore, Galvan's decision is not "of the

kind that the discretionary function exception was designed to shield." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  For this reason, the discretionary function exception will not bar Plaintiffs' negligence claims.

## B.

The Government next argues that, because the FTCA is only available to the extent of state law liability for private parties, and because Galvan's pursuit of the Trailblazer constituted a uniquely governmental function, there can be no liability under the FTCA because there is no "state law analog" for holding private citizens liable in the vehicular pursuit of criminal suspects.  Therefore, the Government argues that the FTCA—and this Court's jurisdictional grant under the FTCA—does not apply in this case.

The Government's argument lacks merit.  To begin, the Government's reliance on *United States v. Olson*, 546 U.S. 43 (2005), is misplaced.  There, the Supreme Court instructed that, under the FTCA, courts should look to "the state-law liability of private entities" and to "private person analogies" to determine whether the Government may be liable for acts that constitute "uniquely government functions."  *Id.* at 46-47.  Here, the liability of private entities for vehicular negligence under Michigan law is well-established, and FTCA case law abounds with instances where plaintiffs have relied on state negligence law to impose liability on the Government for driving by federal employees.  Further, state and local traffic laws are applicable to the Government under the FTCA, and their violation by Government drivers may constitute negligence to the same extent as in the case of private drivers.  *See, e.g.*, *Cary v. United States*, 343 F.

App'x 926 (4th Cir. 2009) (holding that a government driver was negligent as a matter of law for entering an intersection despite being unable to see if the lane was clear, in violation of a Virginia statute).

The Government's assertion that the Court lacks jurisdiction because there is no "state law analog" is without merit. Therefore, the Court will proceed to consider Plaintiffs' negligence claim.

**C.**

To establish a prima facie case of negligence under Michigan law, a plaintiff must prove the following four elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (2000). Causation is comprised of two elements: (1) cause in fact, and (2) legal, or proximate, cause. *Skinner v. Square D Co.*, 445 Mich. 153, 162-63 (1994) (citing *Moning v. Alfono,* 400 Mich. 425, 437 (1977)). "The cause in fact element generally requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred." *Id.* (citation omitted). "On the other hand, legal cause or "proximate cause" normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Id.* (citing *Moning*, 445 Mich. at 439). A plaintiff is required to "adequately establish cause in fact in order for legal cause or 'proximate cause' to become a relevant issue." *Id.* Another important consideration in whether a defendant owes a duty is "whether it is foreseeable that the actor's conduct may create a risk of harm to the victim, and whether the result of that conduct and intervening causes were foreseeable." *Moning*,

8

400 Mich. at 439.

Here, Plaintiffs has not established that Galvan's actions caused Perales's injuries. There is no dispute that Perales's injuries were not caused by contact with the Suburban, but by contact with the fleeing Trailblazer. Plaintiffs say that Galvan was negligent in his decision to pursue and in his failure to terminate pursuit after the Trailblazer turned the wrong way down Morrell Street. Crucially, however, Perales has not demonstrated a factual question over whether or not, had Galvan discontinued pursuit after the Trailblazer turned down Morrell Street, the Trailblazer would have slowed down, turned around and driven in the proper direction, or otherwise proceeded in a way that would have prevented Perales's injuries. Plaintiffs' assertion that Galvan's pursuit down Morrell Street is the "but for" cause of Perales's injuries is purely speculative. Plaintiffs therefore fail to establish a prima facie case of negligence under Michigan law.

## V. CONCLUSION

For the reasons stated above, because Plaintiffs have not raised a genuine issue of material fact as to Galvan's liability under Michigan law, the Government's motion for summary judgment has been granted, and Plaintiffs' motion for summary judgment has been denied.

SO ORDERED.

s/Avern Cohn
UNITED STATES DISTRICT JUDGE

DATED: June 19, 2015

9

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, June 19, 2015, by electronic and/or ordinary mail.

s/Marie Verlinde
Case Manager, (313) 234-5160